IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELIZABETH WAGONER TURNER,

      Plaintiff,

v.                                        Case No. 17-2462-JWB

NANCY A. BERRYHILL,
*Commissioner of Social Security*,

      Defendant.

**MEMORANDUM AND ORDER**

This is an action for review of a final decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits. The matter has been fully briefed and the court is prepared to rule. (Docs. 13, 14, 15.) For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

**I. General Legal Standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the

Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show

that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II. History of Case

Plaintiff filed an application for disability insurance benefits on January 4, 2013. (R. at 303.) She was 27 years old at the time of the application. She had previously (2007-2010) worked in a bank as an account associate. On July 29, 2016, ALJ Cynthia K. Hale denied Plaintiff's application. (R. at 34-48.) At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity from the alleged onset date, September 4, 2010, through the last date Plaintiff was insured under the Act, December 31, 2014. (R. at 36.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: fibromyalgia, chronic fatigue, opiate dependence, anxiety disorder, depressive disorder, bipolar disorder, and marijuana dependence. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of an impairment listed in the regulations. (R. at 37.)

The ALJ proceeded to determine Plaintiff's RFC, concluding that Plaintiff could perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she needed to be able to alternate between sitting and standing every 30 minutes for a brief position change; she needed to avoid concentrated exposure to fumes, odors, and gases, avoid poor ventilation, and avoid anything more than moderation noise levels. She was limited to performing simple to intermediate work tasks with instructions, with no interaction with the general public, and only occasional interaction with coworkers; no constant motion or production-rate work tasks; and she required a low-stress work environment. (R. at 39.)

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (R. at 46.) At step five, the ALJ found that, through the date Plaintiff was last insured, and considering Plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Plaintiff could perform, including Final Assembler (DOT 713.687-018), Document Preparer (DOT 249.587-018), and Administrative Support Worker (DOT 209.587-010). (R. at 47.) The ALJ thus found Plaintiff was not disabled within the meaning of the Social Security Act.

## III. Analysis

A. <u>RFC – physical impairments</u>. Plaintiff argues the ALJ's physical RFC is unsupported by substantial evidence. (Doc. 13 at 24.) In particular, Plaintiff contends the ALJ erroneously rejected the opinion of Stewart Grote, D.O., a treating physician, based on the ALJ's misunderstanding of fibromyalgia and chronic fatigue syndrome. Plaintiff contends these impairments "will not be manifested in motor or neurological deficits," and the ALJ thus erred in rejecting Grote's opinion on grounds that his treatment notes "do not document any motor or neurological deficits reasonably consistent with his conclusions," or because Plaintiff may have had normal results on range-of-motion, strength, or cognitive function tests. (*Id.* at 24-25.) Plaintiff also challenges the ALJ's rejection of Grote's opinion for consisting of mere "checkbox forms," arguing the ALJ ignored Grote's treatment records showing the severity of Plaintiff's impairments. (*Id.* at 25.)

"When analyzing a treating physician's opinion, an ALJ first considers 'whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record.'" *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (quoting *Pisciotta v. Astrue,* 500 F.3d 1074, 1077 (10th Cir.2007)). If

the opinion is well supported, the ALJ must give it controlling weight. *Id.* If the ALJ decides the opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight. *Id.* Relevant factors that the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331–32 (citations omitted).

The ALJ must give good reasons for the weight assigned to a treating physician's opinion. *Id.* The reasons must be sufficiently specific to make clear the weight the ALJ assigned to the opinion and the reasons for that weight. *Id*. If the opinion is rejected completely, the ALJ must give specific, legitimate reasons for doing so. *Id*.

In a medical source questionnaire completed in early 2014, Dr. Grote assessed Plaintiff at a non-functional level for nearly every category of both physical and mental capacity, including: she was unable to sit, stand, or walk; she could not do simple grasping, pushing and pulling, or fine manipulation with either hand; she could not use either hand for repetitive motion; she could not use either foot for repetitive movements; she could never lift or carry any amount of weight; she could never climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level; she had a total restriction against activities involving unprotected heights, moving machinery, changes in temperature and humidity, driving, and exposure to dust, fumes, and gases; her fatigue and pain prevented her from working even in a sedentary position; Grote described it (without elaboration) as the "worst case of [fibromyalgia] I've seen in 28 years" of practice; she was markedly limited in all subcategories of mental capacity (under the general categories of understanding and memory;

5

sustained concentration and persistence; social interaction; and adaption) except for the ability to interact with the general public and the ability to ask simple questions or request assistance, as to which she was moderately limited; and the mental effects of her pain and medication were severe, thereby precluding the attention and concentration required for even simple, unskilled work tasks. (R. at 812-18.)

The ALJ gave Grote's opinion no weight at all. (R. at 45.) The ALJ acknowledged Grote's treatment relationship with Plaintiff, but concluded his opinions were not well supported by the medical evidence of record. (*Id.*). After noting Grote's opinion that Plaintiff could never perform any work-related function - including sitting, standing, or walking - the ALJ examined Dr. Grote's treatment notes, and first observed they contained no documentation of any motor or neurological deficits. (R. at 45.) The ALJ also observed that Grote's exams were "non-focal" or merely recorded Plaintiff's subjective complaints. (*Id.*) In doing so, the ALJ applied correct legal standards, because an ALJ is required to determine whether a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques." *Allman*, 813 F.3d at 1326. The ALJ's assessment was also consistent with the regulations, which require consideration of the treatment relationship and the degree to which the opinion is consistent with or supported by the record as a whole. The ALJ acknowledged and credited Grote's single observation in December 2013 that Plaintiff had marked swelling in her hands and feet, but concluded this was not sufficient to support the extreme limitations found by Grote. The ALJ elsewhere pointed out that other physical examinations "consistently revealed full bulk and strength in all four extremities and a normal gait, including heel, toe and tandem gait, without any need for assistive device," as well as findings "showing normal sensation and reflexes or no focal neurological deficits." (R. at 41.). Those findings have some support in the records cited by the ALJ. (*Id.*) (citing Exh. 2F/4; 5F;

7F/2; 21F/11; 25F/12.) Grote opined that Plaintiff could not walk for any period or perform fine motor movements, but a consultative exam cited by the ALJ found Plaintiff was walking unimpaired and could pick up a coin, open a door, and fasten a button. (R. at 803-04.) The ALJ also accurately observed that despite Grote's opinion that Plaintiff was "completely dysfunctional" both physically and mentally, his treatment consisted largely of vitamin infusions. *Allman*, 813 F.3d at 693 (ALJ should consider the treatment provided in determining weight to be given to treating physician opinion). The ALJ also noted Plaintiff had a prior episode of malingering in which she claimed an inability to stand or walk, only to later admit she was feigning symptoms in the hope of avoiding jail time in a criminal matter, and she thereafter demonstrated an ability to get up and walk without impairment. (R. at 42.) Grote also found Plaintiff markedly limited in nearly all areas of mental functioning, but the ALJ cited examinations in which the clinical findings showed Plaintiff's "memory was intact, [she was] oriented, [had] regular speech, fair concentration/attention, [and] normal mood and affect…." (R. at 42.) Finally, the ALJ accurately pointed out that Grote's opinions were not well explained, which is a legitimate factor to consider in determining the weight to be given an opinion, particularly in view of the absence of objective support in Dr. Grote's treatment notes for these opinions. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.")

The ALJ's rejection of Dr. Grote's opinion was not error. As the foregoing indicates, the ALJ gave specific and legitimate reasons for rejecting the opinion. The ALJ applied correct legal standards and cited a proper factual basis for finding that Grote's opinion was not well supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the other substantial evidence in the record.

Moreover, there was substantial evidence in the record supporting the physical RFC adopted by the ALJ. The ALJ cited evidence that despite Plaintiff's claims of being unable to walk for more than five minutes, physical exams showed she had full strength in her limbs and an ability to walk without an assistive device. (R. at 41.) She claimed pain, numbness, and an inability to perform fine motor tasks, but clinical tests showed normal sensation and reflexes with no neurological deficits. (*Id.*) At more than one exam, she did not display any physical limitation and walked unimpaired. (*Id.*) She displayed normal range of motion in all joints, had grip strength of 60 pounds bilaterally, had only mild difficulty squatting and arising from a seated position, and had no difficulty with heel and toe walking. (*Id.*) Plaintiff claimed her activities of daily living were extremely limited, but the ALJ noted Plaintiff engaged in activities inconsistent with that claim, including traveling to New Jersey by plane, exercising, and spending time with a faith group. (R. at 43.) The ALJ also considered statements by Plaintiff's chiropractor, who said he saw no evidence of any physical restrictions or muscle weakness that would keep Plaintiff from working, although he added that he saw Plaintiff for only brief periods and would not know of her ability to withstand prolonged standing, sitting, or being under stress. (R. at 705.) The ALJ gave the statements "little weight," but found they further showed that Plaintiff's allegations were not fully supported by the medical evidence. (R. at 45.)

The ALJ also considered the opinion of state agency medical consultant Dick Geis, M.D., who opined that Plaintiff was capable of performing light exertional work provided she avoided concentrated exposure to pulmonary irritants. That opinion included findings that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds, stand or walk about 6 hours of an 8 hour day; push and pull without limits; work with no postural or manipulative limitations; and work without environmental limits except as to exposure to pulmonary irritants (e.g., fumes, odors, dust,

et cet.). (R. at 144-46.) The ALJ noted Dr. Geis was familiar with the disability determination process and the regulations and his opinion was accompanied by a detailed explanation of the evidence relied upon. (R. at 44.) The ALJ weighed evidence contradicting and supporting the opinion, including Plaintiff's ongoing treatment for persistent symptoms, medical exams showing no chronic motor or neurological deficits, Plaintiff's allegations of being bedridden or needing a wheelchair, and evidence of malingering. (*Id.* at 44-45.) The ALJ obviously gave only partial weight to Dr. Geis's findings, concluding that "while the medical and other evidence of record does not fully support the severity and degree of limitation" claimed by Plaintiff, Geis's finding that Plaintiff could perform light work "*without any additional postural limitations … is inconsistent with the claimant's history of treatment for fibromyalgia and chronic fatigue….*" (R. at 45) (emphasis added.) The ALJ "therefore limits the claimant to the range of sedentary work outlined" in the RFC. (*Id.*)

The ALJ's adoption of limitations more favorable to Plaintiff than those expressed by Dr. Geis does not show the ALJ "improperly relied on her own purported 'medical expertise' in establishing the RFC." (Doc. 13 at 27.) Although the ALJ did not expressly state she was giving Dr. Geis's opinion partial weight, she clearly did so, crediting his opinion to a degree but finding the record as a whole showed Plaintiff had greater limitations due to her severe impairments. Thus, "[s]econdary to chronic fatigue and fibromyalgia," the ALJ found Plaintiff was "capable of performing less than the full range of sedentary work," and could lift ten pounds occasionally, five pounds frequently, stand and walk up to 2 hours, and sit for 6 hours, with a need to alternate between sitting and standing every thirty minutes "[d]ue to pain and fatigue." (R. at 43.) In so doing, the ALJ carefully weighed the conflicting evidence and properly made findings as to Plaintiff's functional limitations. This was not an improper substitution of judgment. *See Davidson*

*v. Berryhill*, No. 17-2139-JWL, 2018 WL 1412064, *10 (D. Kan. Mar. 20, 2018) (ALJ accepting diagnosis but disagreeing with physician's functional limitations is not impermissible substituting of medical judgment; it is fulfilling ALJ's duty to make administrative evaluation of the evidence); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("we are aware of no controlling authority holding that the full adverse force of a medical opinion cannot be moderated favorably in this way unless the ALJ provides an explanation for extending the claimant such a benefit"). Considering the record as a whole, the ALJ's physical RFC findings were supported by substantial evidence.

B. <u>RFC – mental impairments</u>. Plaintiff next contends the RFC's limitations from mental impairments are not supported by substantial evidence. She asserts that the ALJ failed to adequately address the opinions of consultative psychologist David Pulcher, Ph.D., whose report included statements that Plaintiff had a limited ability to perform math functions and her adaptability and persistence were "negatively impacted" by her psychological symptoms. (Doc. 13 at 28-29.) Additionally, Plaintiff contends the ALJ erred by failing to explain why the RFC included no limitations on Plaintiff's ability to interact with supervisors. (*Id.* at 30.)

Dr. Pulcher performed a consultative examination of Plaintiff and diagnosed her with major depressive disorder. (R. at 799-801.) He concluded Plaintiff's ability to understand and carry out simple instructions was grossly intact but she had "some limitation in her arithmetic abilities or responses at the present time." (R. at 801.) He found her attention and concentration were in the lower end of the average range, but her ability to work with others without distraction or interference from psychological symptoms was significantly limited, "as she is chronically depressed and anxious with suicide thoughts." (*Id.*) He also stated that her adaptability and persistence "appears to be negatively impacted" by her psychological and physical symptoms. (*Id.*)

In determining Plaintiff's mental RFC, the ALJ gave "great weight" to the opinions of two state agency psychological consultants, Sallye Wilkinson, Ph.D. and Robert McRoberts, Ph.D. The ALJ found their opinions were based upon comprehensive reviews of the record, were accompanied by detailed narratives explaining what evidence was relied upon, and the opinions were consistent with the evidence of record "including … the mental status examinations showing intact memory, concentration and attention…." (R. at 44) (citing Exhs. 2A, 4A.) Dr. Wilkinson opined that Plaintiff has understanding and memory limitations, but she can understand and carry out intermediate or simple instructions, while being moderately limited in remembering detailed instructions. Dr. Wilkinson found Plaintiff can "maintain attention, work with ordinary supervision, and complete a normal workweek without interruptions" from psychological symptoms. (R. at 127). Dr. Wilkinson also found Plaintiff has a moderate limitation on interaction with the general public, but is otherwise not significantly limited in social interaction. Thus, according to Dr. Wilkinson, Plaintiff can accept instructions from and respond appropriately to criticism from supervisors but can only have infrequent interaction with the public. (R. at 128.) Similarly, she found Plaintiff was moderately limited in setting realistic goals or making plans independently, but "has the capacity to adapt to most work situations" not involving such goal setting or planning. (*Id.*) Dr. Wilkinson also addressed Dr. Pulcher's opinions referred to above, finding they were not consistent with the medical evidence of record and that some of the symptoms Plaintiff reported to Dr. Pulcher were not apparent elsewhere in the record. Dr. Wilkinson also alluded to evidence that Plaintiff previously reported symptoms "to achieve secondary gain…." (*Id.*) Dr. McRoberts essentially endorsed the same limitations as Dr. Wilkinson. He added that Dr. Pulcher's opinion relied heavily on unsupported subjective reports

of symptoms by Plaintiff and that it was without substantial support from other evidence in the record. (R. at 149.)

The ALJ reviewed the opinions of Dr. Pulcher and gave them partial weight. The ALJ first noted Dr. Pulcher's finding that Plaintiff's "ability to understand and carry out simple instructions was grossly intact, though there was some limitation in her arithmetic abilities at that time." (R. at 44.) The ALJ found this was "consistent with [Dr. Pulcher's] findings, and with the other mental status examinations of record, which … consistently show that the claimant's memory is intact and her attention and concentration are fair or within normal limits." (R. at 44.) The finding concerning Plaintiff's memory, attention, and concentration has substantial support in the record. *See e.g.,* R. at 609 (alert and oriented, memory grossly intact); R. at 758 (mild impairment overall; no observed cognitive impairment); R. at 886 (insight and judgment fair, memory is intact). Plaintiff contends the ALJ erred by not further addressing Dr. Pulcher's opinion that Plaintiff had "some limitation" in arithmetic abilities, but there is no contradiction between that opinion and the RFC, which limited Plaintiff to performing only "simple to intermediate work tasks with instructions." That restriction adequately addressed Plaintiff's asserted arithmetic limitation.[1] *Cf. Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (RFC limiting claimant to unskilled work adequately accounted for moderate limitation in concentration, persistence, and pace). With such a limitation, the jobs identified by the vocational expert and the jobs which the ALJ found Plaintiff could perform were limited to unskilled occupations with an SVP of 2. Unskilled work generally requires only the following: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work—i.e., simple

---

[1] The ALJ elsewhere noted that Plaintiff "was able to solve four of five sample arithmetic problems, she performed serial threes correctly and rapidly and she was able to count backward from 20 to 1, although she was only able to complete serial sevens by counting on her fingers." (R. at 43.)

work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. (*Id.*) (quoting SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996)). Under the circumstances, the ALJ did not err by failing to further address a limitation on arithmetic computation.

Plaintiff contends the ALJ also erred by not specifically addressing Dr. Pulcher's opinion that Plaintiff's "adaptability and persistence appears to be negatively impacted" by her psychological and physical symptoms. But Dr. Pulcher expressed no opinion as to the severity or degree of any negative impact, nor did he specify how the impact would manifest itself. The only specific opinions on those matters came from Drs. Wilkinson and McRoberts, who opined that Plaintiff "has the capacity to adapt to most work situations that do not require extensive … planning," and she was not significantly limited in any category of sustained concentration or persistence except for a moderate limitation on carrying out detailed instructions. (R. at 127, 147.) The ALJ gave great weight to the latter opinions and incorporated them in the RFC. Because Dr. Pulcher expressed no opinion on the degree of any limitation, and the RFC was in fact consistent with his opinion, any error by the ALJ in not further addressing Dr. Pulcher's opinion was harmless. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of [RFC].") Similarly unpersuasive is Plaintiff's argument that the ALJ erred by not explaining why the RFC included no limitation on Plaintiff's ability to interact with supervisors. Dr. Pulcher offered no opinion that Plaintiff would have such a limitation, while Drs. Wilkinson and McRoberts were both of the opinion that Plaintiff was not significantly limited in that regard. *See* R. at 127-28 (Plaintiff has the ability to "work with ordinary supervision," is not

significantly limited in accepting instructions and criticism from supervisors, and "is able to relate

to supervisor[s]").

Under the court's standard of review, it will not reweigh the evidence or substitute its

judgment for that of the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

There was substantial evidence in the record supporting the ALJ's findings and the ALJ applied

the correct legal standards.

**IT IS THEREFORE ORDERED** this 12th day of July, 2018, that the final decision of

the Commissioner denying Plaintiff's application for disability benefits is AFFIRMED.

___s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
